UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-23985-CIV-GAYLES

LAURA GUZMAN, *as personal representative*
*of the Estate of Arturo Guzman*,
                          Plaintiff,

                    v.

CITY OF HIALEAH;
SERGIO VELAZQUEZ, *in his official capacity*
*as Chief of Police for the City of Hialeah*;
RICK FERNANDEZ, *individually and in his*
*official capacity as a police officer for the City of*
*Hialeah*; ANTONIO LUIS, *individually and in*
*his official capacity as a police officer for the*
*City of Hialeah*; and JOHN DOE OFFICERS,
                          Defendants.
                                                                    /

## ORDER

Plaintiff Laura Guzman, as personal representative of the estate of her late husband Arturo

Guzman, brings this action arising out of her husband's death from gunshot wounds allegedly

inflicted by City of Hialeah police officers who responded to a domestic dispute at the Guzmans'

home in October 2013. Presently before the Court are motions to dismiss filed by Defendant City

of Hialeah (the "City") [ECF No. 22]; Defendant Sergio Velazquez, the City's Chief of Police [ECF

No. 21]; and Defendant Antonio Luis, a City police officer [ECF No. 20]. The Court has carefully

considered the operative complaint, the parties' briefing, and the applicable law and is fully

advised in the premises. For the reasons that follow, the City's motion to dismiss the Plaintiff's

failure to train claim under 42 U.S.C. § 1983 shall be denied, and the motions shall otherwise be

granted.

1

## I.     BACKGROUND

According to the allegations in the Amended Complaint, on the evening of October 27, 2013, Mrs. Guzman was hosting visitors inside her home in Hialeah, Florida, when she became involved in an argument with her husband, the decedent. Am. Compl. ¶ 15-16. As a result of the argument, the visitors left. *Id.* ¶ 17. Shortly thereafter, Mrs. Guzman called 911 to report the domestic dispute. *Id.* ¶ 18. Immediately following the call, she fled her home and met two City of Hialeah police officers, Defendants Antonio Luis and Rick Fernandez, several blocks away. *Id.* ¶ 19. Sergeant Luis and Lieutenant Fernandez[1] cleared the home, leaving only Mr. Guzman inside, then called for a SWAT backup. *Id.* ¶ 20. Instead of waiting for the backup to arrive, the two officers forcibly entered the room where Mr. Guzman had barricaded himself in a closet, whereupon both shot him several times. *Id.* ¶¶ 21-22. Mr. Guzman was thereafter transported to a local hospital where he was pronounced dead from the gunshot wounds. *Id.* ¶ 23.

Mrs. Guzman filed suit in this Court on October 23, 2015, against Sergeant Luis and Lieutenant Fernandez,[2] as well as the City of Hialeah; Defendant Sergio Velazquez, the City's Chief of Police; and several unknown officers. Chief Velazquez was the first to file a motion to dismiss, after which Mrs. Guzman amended her complaint. In that Amended Complaint, she asserts eight causes of action: (1) excessive force against Sergeant Luis, Lieutenant Fernandez, and "offending officers"; (2) a 42 U.S.C. § 1983 claim alleging a policy or custom of excessive force against the "City of Hialeah Police Department"; (3) a Section 1983 claim alleging failure to train against the City; (4) negligent retention against the City; (5) negligent training and super-vision against the City; (6) wrongful death against all Defendants; (7) failure to intervene against

---

[1]   Although the pleadings refer to Luis and Fernandez as "Officers," counsel informed the Court at a status conference that Luis is a Sergeant with the Hialeah Police Department and Fernandez is a Lieutenant (their respective rank-ings are also designated on page 1 of the Amended Complaint). The Court will therefore refer to them as such.

[2]   To date, Lieutenant Fernandez has not been served in this lawsuit.

the unknown officers; and (8) intentional or negligent infliction of emotional distress against the City, Sergeant Luis, Lieutenant Fernandez, and the unknown officers.

The City, Chief Velazquez, and Sergeant Luis filed separate motions to dismiss on March 28, 2016, seeking to dismissal of various claims in the Amended Complaint. Mrs. Guzman opposes the motions.

## II.     LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III.     DISCUSSION

### A.     *The Plaintiff Voluntarily Dismisses Counts IV and VII*

In her opposition brief, Mrs. Guzman states that she voluntarily dismisses Count IV (negligent retention against the City) and Count VII (failure to intervene against the unknown officers) without prejudice. Accordingly, these claims are dismissed without prejudice.

### B.      *Sergeant Luis's Motion to Dismiss*

In his motion, Sergeant Luis seeks to have Counts VI (wrongful death) and VIII (intentional or negligent infliction of emotional distress) dismissed as to him because, he argues, he has statutory immunity under Fla. Stat. § 768.28, and because Mrs. Guzman has failed to state claims against him with sufficient factual support. *See generally* Luis Mot. at 3-10. The Court agrees that Mrs. Guzman fails to sufficiently allege these claims against Sergeant Luis. However, in her opposition and through an *ore tenus* motion by counsel, she seeks to amend her complaint as to these counts. Her motion is unopposed by Sergeant Luis. Accordingly, Sergeant Luis's motion to dismiss is granted and these counts are dismissed without prejudice, although Mrs. Guzman shall be granted leave to file a Second Amended Complaint.

### C.      *Chief Velasquez's Motion to Dismiss*

Chief Velazquez seeks to dismiss the claim naming him specifically, Count VI (wrongful death claim against "all Defendants"), as well as Count I (excessive force against "offending officers") to the extent it could be inferred that he is an "offending officer."[3] He argues that there are no allegations that he contributed to Mr. Guzman's death in any way, nor are there allegations that he was present during the incident at all. *See* Velazquez Mot. at 3-5. In her single brief in opposition to the three motions to dismiss, Mrs. Guzman did not refute (or even address) any of the arguments advanced by Chief Velazquez.

A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point. *See Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) (citing *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with

---

[3]   Chief Velazquez also moved to dismiss Count VII to the extent it could be inferred that he is or could be an "unknown officer," but, as previously mentioned, Mrs. Guzman has voluntarily dismissed this count. *See supra* Section III.A.

4

pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." (citation and internal quotation marks omitted))). Accordingly, Chief Velazquez's motion to dismiss is granted, and these claims against him are dismissed without prejudice.

### D.      *City of Hialeah's Motion to Dismiss*

The City has moved to dismiss each of the remaining claims against it: Count II (policy or custom of excessive force under Section 1983); Count III (failure to train under Section 1983); Count V (negligent training and supervision); Count VI (wrongful death); and Count VIII (intentional or negligent infliction of emotional distress). The Court addresses each of these claims in turn.

#### 1.      Count II: Excessive Force under Section 1983

In Count II, Mrs. Guzman alleges a 42 U.S.C. § 1983 claim alleging an unofficial policy, practice, procedure, or custom of excessive force. The City argues, first, that this claim should be dismissed because Count II is brought against only the "City of Hialeah Police Department," which is not a separate legal entity with the capacity to be sued. *See, e.g.*, *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." (citations and internal quotation marks omitted)); *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 2d DCA 1995) ("[T]he Florida City Police Department is not a proper defendant in a suit for damages because the Police Department does not have the capacity to sue and be sued."). In her opposition, Mrs. Guzman states that it was due to a "transcription error" that the City's Police Department was named in this count rather than the City itself, pointing to the fact that the Police Department is not named as a Defendant in this action, the City is; and that the Police Department is not mentioned as a separate legal entity that would be liable for damages. Although the Court agrees that the City of Hialeah Police

Department is not capable of being sued, considering the context of the Amended Complaint, and considering the judicial economy that would be squandered by dismissing the count just so the Plaintiff could replace "Police Department" with "City" in the text of the complaint, the Court will instead construe Count II to assert a claim against the City, rather than its Police Department.

The City next argues that this claim should be dismissed because Mrs. Guzman has failed to allege a valid basis for Eighth Amendment liability, which she alleges gives rise to this claim. *See* Am. Compl. ¶ 41 ("This unofficial policy, practice, procedure, and/or custom of the [City] violated [Mr. Guzman]'s constitutional rights under the Eighth and Fourteenth Amendments to the Constitution."). But in *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Supreme Court was explicit that "***all*** claims that law enforcement officers have used excessive force—deadly or not— in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . ." *See also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) ("[T]he Eighth Amendment is out because it applies only after a citizen has been convicted of a crime, and [the plaintiff] never was."). Because Mr. Guzman was not convicted of the crime at the time the Officers allegedly used excessive force against him, any claim for relief under the Eighth Amendment must fail as a matter of law.

Even so, Mrs. Guzman contends that because the Supreme Court in *Graham* "did not order dismissal, but rather remanded the case for review under the Fourth Amendment's reasonableness standard," this Court should also review this claim under the Fourth Amendment instead. Pl.'s Opp'n at 3. This argument does not persuade, because the Supreme Court in *Graham* announced what amounted to a new rule of law, and then remanded to the lower court to analyze the claims under this rule as explained in that decision. *See* 490 U.S. at 395 ("Today we make explicit what was implicit in [*Tennessee v.*] *Garner*'s analysis . . . ."). Here, by contrast, it is beyond settled that the Eighth Amendment does not protect individuals who have not been convicted of a crime,

6

so the Court will not take Mrs. Guzman's suggestion to view the claim as one alleging a violation of the Fourth Amendment. Because Mr. Guzman was not convicted of a crime when the incident occurred, there can be no claim for liability under the Eighth Amendment. Accordingly, the City's motion to dismiss Count II is granted. This claim is dismissed with prejudice.

### 2.      Count III: Failure to Train under Section 1983

In Count III, Mrs. Guzman alleges that the City acted with deliberate indifference to Mr. Guzman's rights by failing to train its police officers to employ safe, reasonable, and necessary techniques so as to avoid incidents like the one giving rise to this suit, in violation of Section 1983.

A municipality's liability under Section 1983 may not be based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A local government . . . will be liable under section 1983 only for acts for which the local government is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. 544. Thus, to state a Section 1983 claim against the City, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Mrs. Guzman, therefore, has two methods by which to establish the City's liability: "identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policymaker for the [City]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

"In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a failure to train or supervise claim, a plaintiff must sufficiently allege that the "municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th

7

Cir. 1998). Such a policy of inadequate training may be proved by showing that the failure to train evidenced a "deliberate indifference" to the rights of a municipality's citizens. *Id.* In that regard, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409).

In the Amended Complaint, Mrs. Guzman alleges a list of various incidents involving excessive force used by the City's police officers, as well as various infractions committed by Sergeant Luis and Lieutenant Fernandez themselves, contending that these establish the requisite pattern of similar constitutional violations. The City argues that these incidents are irrelevant to this claim because they do not evidence the required pattern of similar violations.

Ultimately, the Court need not engage in a review of these incidents for "evidence of previous incidents is not required to establish city policy if the need to train and supervise in a particular area is 'so obvious' that liability attaches for a single incident." *Weiland*, 792 F.3d at 1329. "In establishing this form of notice, the Supreme Court referenced the proper use of firearms and the correct use of deadly force as an area that would be so obvious as to require adequate training by the municipality to avoid liability." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)); *see also Gold*, 151 F.3d at 1352; *Giraldo v. City of Hollywood*, 142 F. Supp. 3d 1292, 1306-07 (S.D. Fla. 2015). The claim here arises from this precise scenario—the use of deadly force by police officers with municipally issued firearms. The Court therefore finds that the City's alleged failure to train Sergeant Luis and Lieutenant Fernandez could plausibly have created such an obvious risk that it alone establishes the City's deliberate indifference to the risk that the officers would use excessive force against Mr. Guzman. Accordingly, the City's motion to dismiss this claim is denied.

8

### 3.     Count V: Negligent Training or Supervision

In Count V, Mrs. Guzman alleges that the City negligently supervised or trained its police officers "regarding the appropriate procedures in making an arrest following a suspected domestic incident, the use of firearms when arresting an individual, the proper discharge of a firearm, and the use of deadly force." Am. Compl. ¶ 70. She further alleges that the City breached a duty of care by failing to provide Sergeant Luis and Lieutenant Fernandez "with proper and special training and/or supervision so that they could be prepared to execute the necessary duties reasonably expected of them during the course and scope of their employment when it had knowledge of [Luis and Fernandez's] propensity to disregard standard protocol." *Id.* ¶ 71.

Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents. *E.g.*, *Dep't of Entvl. Prot. v. Hardy*, 907 So. 2d 655 (Fla. 5th DCA 2005). That said, the State of Florida and its subsidiaries (including municipalities) are generally immune from tort liability. *See* Fla. Const. art. X § 13. Although the State has waived this governmental immunity for its subsidiaries under certain circumstances, *see* Fla. Stat. § 768.28(1), the waiver does not apply if the challenged acts of the agent or employee are "'discretionary' governmental acts rather than merely 'operational' ones." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). An act is "discretionary" when all of the following conditions have been met:

> (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

*Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) (quoting *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1019 (Fla. 1979)). "In short,

an act is 'discretionary' if it involves an 'exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning.' Conversely, an 'operational' act is one not necessary to or inherent in policy or planning that merely reflects a secondary decision as to how those policies or plans will be implemented." *Lewis*, 260 F.3d at 1264-65 (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989))).

The City argues that the Eleventh Circuit's decision in *Lewis v. City of St. Petersburg* squarely forecloses this claim. The relevant portion of that decision reads as follows:

> Lewis does not challenge the implementation or operation of the City's police training program as it relates to the officers involved in this shooting, but rather Lewis challenges the City's policy decisions regarding what to include in the training of its police officers. A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. Because Lewis challenges the reasonableness of basic policy decisions made by the City, the "discretionary" function exception to the waiver of sovereign immunity applies and her claim is barred.

*Id.* at 1266.

Here, as in *Lewis*, the challenged actions are the City's police training procedures regarding "how to train its officers and what subject matter to include in the training." *Id.*; *see also, e.g.*, Am. Compl. ¶ 70 ("The City owed [Mr. Guzman] . . . a duty to properly train and supervise its police officers regarding the appropriate procedures in making an arrest following a suspected domestic incident, the use of firearms when arresting an individual, the proper discharge of a firearm, and the use of deadly force."). Thus, as in *Lewis*, "the acts which [Mrs. Guzman]'s negligent training claim challenge[s] are 'discretionary' governmental functions immune from tort liability." 260 F.3d at 1266. "To find otherwise would amount to judicial intervention, by way of tort law, into the fundamental decisionmaking of the legislative and executive branches—a practice against which the Florida courts have repeatedly cautioned." *Cook ex rel. Estate of Tessier v.*

10

*Sheriff*, 402 F.3d 1092, 1118-19 (11th Cir. 2005).

Mrs. Guzman has failed to respond to this argument in her opposition, and, as explained previously, she therefore concedes the point. *Anderson*, 119 F. Supp. 3d at 1345. Accordingly, the motion to dismiss this claim is granted. Furthermore, because "[a] court must find no liability as a matter of law if . . . the doctrine of governmental immunity bars the claim," *Kaisner*, 543 So. 2d at 734, Count V is dismissed with prejudice.

### 4.       Count VI: Wrongful Death

In Count VI, Mrs. Guzman alleges a claim for wrongful death against the City. In the Amended Complaint, her allegations as to the City are that "the City was negligent in the following ways: (a) failing to properly train and supervise officers on the appropriate procedures in order to safely make an arrest; (b) failing to properly train and supervise officers on the appropriate use of firearms when arresting an individual; (c) failing to properly train and supervise officers on the appropriate procedures for the discharge of a firearm; and (d) failing to properly train and supervise officers on the appropriate use of deadly force." Am. Compl. ¶ 81. She also alleges that Officers Luis and Fernandez "owed" Mr. Guzman a "duty" to use reasonably necessary force to gain control over him, and "breached" that duty, which "proximately caused his death and all resulting damages." *Id.* ¶¶ 75, 78, 80. In short, Mrs. Guzman alleges that, as a result of the City's negligence in properly training its officers, it should be held responsible for Sergeant Luis and Lieutenant Fernandez's negligent use of excessive force that led to Mr. Guzman's wrongful death.

But the Eleventh Circuit's mandate on this issue is clear: "[I]t is impossible to allege the negligent commission of an intentional tort, such as the use of excessive force." *City of West Palm Beach*, 561 F.3d at 1294; *see also City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) (explaining that a police officer's use of excessive force necessarily involves the intentional tort of battery, and holding that "it is not possible to have a cause of action for 'negligent' use of excessive

force because there is no such thing as the 'negligent' commission of an 'intentional' tort"). Mrs. Guzman's allegations pertaining to the City and to the Officers are presented in terms of negligence, rather than the intentional tort of excessive force. Her claim must therefore fail.

Alternatively, as the City points out, Mrs. Guzman's allegations vis-à-vis the City are duplicative of her allegations on the negligent training and supervision claim, a claim the Court has already dismissed. For both of these reasons, the City's motion to dismiss this claim is granted. Count VII is dismissed with prejudice.

### 5. Count VIII: Intentional or Negligent Infliction of Emotional Distress

In Count VIII, Mrs. Guzman alleges that the City should be liable for intentional infliction of emotional distress because Sergeant Luis and Lieutenant Fernandez's conduct "went beyond all bounds of decency so as to be regarded as odious and utterly intolerable in a civilized community." Am. Compl. ¶ 89. But Fla. Stat. § 768.28(9)(a) provides, in relevant part, that "[t]he state or its subdivisions *shall not* be liable in tort for the actions or omissions of an officer . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (emphasis added). Based on her own admission, the Officers' conduct was committed in a manner exhibiting wanton and willful disregard of Mr. Guzman's human rights or safety. *See* Pl.'s Opp'n at 8 ("It is clear from the entirety of the Plaintiff's First Amended Complaint . . . that the offending officers . . . acted in a manner exhibiting wanton and willful disregard for the safety and rights of Mr. Guzman."). As a result, Florida law mandates that the City cannot be held liable for such conduct by the Officers. The motion to dismiss the intentional infliction of emotional distress claim against the City shall therefore be granted.

Finally, turning to the negligent infliction of emotional distress claim, as explained above in the analysis of the wrongful death claim, Florida law does not recognize a cause of action for the negligent use of force by a police officer in making an arrest. *See City of West Palm Beach*,

561 F.3d at 1294; *Sanders*, 672 So. 2d at 48. Thus, where a plaintiff "alleges negligent infliction of emotional distress in the context of" a police officer's infliction of an intentional tort, such a claim is "non-cognizable." *Feliciano v. City of Miami Beach*, 847 F. Supp. 2d 1359, 1367-68 (S.D. Fla. 2012). Accordingly, the motion to dismiss the negligent infliction of emotional distress claim against the City shall also be granted. Count VIII is dismissed with prejudice as to the City.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the City of Hialeah's Motion to Dismiss [ECF No. 22] is **GRANTED IN PART and DENIED IN PART** and Defendant Luis and Defendant Velazquez's Motions to Dismiss [ECF Nos. 20 & 21] are **GRANTED** as follows:

(1)    Count I of the Amended Complaint, to the extent it alleges a claim against Defendant Velazquez, is **DISMISSED WITHOUT PREJUDICE**;

(2)    Count II is **DISMISSED WITH PREJUDICE**;

(3)    the City's Motion to Dismiss Count III is **DENIED**;

(4)    Count IV is **DISMISSED WITHOUT PREJDUICE** voluntary by the Plaintiff;

(5)    Count V is **DISMISSED WITH PREJUDICE**;

(6)    Count VI is **DISMISSED WITH PREJUDICE** as to the City of Hialeah and **DISMISSED WITHOUT PREJUDICE** as to Defendants Velasquez and Luis;

(7)    Count VII is **DISMISSED WITHOUT PREJUDICE** voluntarily by the Plaintiff;

(8)    Count VIII is **DISMISSED WITH PREJUDICE** as to the City of Hialeah and **DISMISSED WITHOUT PREJUDICE** as to Defendant Luis; and

(9)    the Plaintiff must file a Second Amended Complaint no later than **July 28, 2016**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 14th day of July, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE